Judith Mariela Lemus-Coronado; D.A.M.I.

*Petitioners*

v.

Merrick B. Garland, Attorney General of the United States

*Respondent*
_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

Submitted: November 17, 2022
Filed: January 23, 2023
_____

Before COLLOTON, SHEPHERD, and GRASZ, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

    Judith Mariela Lemus-Coronado (Petitioner) and her daughter, D.A.M.I., natives and citizens of Guatemala, petition for review of an order of the Board of Immigration Appeals (BIA) affirming the immigration judge's (IJ) decision finding Petitioner removable and denying her application for asylum and withholding of removal. Having jurisdiction under 8 U.S.C. § 1252, we deny the petition.

Appellate Case: 22-1015     Page: 1     Date Filed: 01/23/2023 Entry ID: 5237924

I.

Prior to arriving in the United States, Petitioner lived in Guatemala. She was very close to her partner's brother, Wilvy Interiano-Erazo, who helped the couple after the birth of their daughter. Interiano-Erazo was the private driver for the then-mayor of their town, who was known to be an "anti-crime/anti-corruption politician" and disfavored among drug traffickers and criminal organizations. Interiano-Erazo likewise had political aspirations, hoping to become the next mayor on a similar "anti-narco" platform. On November 21, 2013, Interiano-Erazo invited Petitioner to his house; he had things he wished to give to his niece. While the two were outside of Interiano-Erazo's home, three men—whom Petitioner believed to be drug traffickers—arrived on the scene armed with high-caliber weapons. After one man shot Interiano-Erazo, another stated that because Interiano-Erazo "did not support them[,] they were going to kill him." Then, the men shot Interiano-Erazo several more times. Petitioner was next to Interiano-Erazo throughout the altercation. The men told Petitioner that "she did not have to tell anyone what she had seen and [that] it was best if she stayed quiet." Interiano-Erazo died from his injuries before he arrived at the hospital.

Two weeks after the incident, Petitioner received text messages that she should not tell anyone about Interiano-Erazo's murder or there would be consequences. The text messages also threatened harm to her daughter. Petitioner then filed a police report recounting the murder and the text messages. Law enforcement accepted the police report, but the record does not indicate whether any further investigation occurred. Petitioner subsequently received more threats; she believed that law enforcement told the drug traffickers about the report. Though she was never physically harmed, Petitioner claimed that she suffered psychological harm as a result of the murder and threats.

Petitioner departed Guatemala on June 6, 2014, and entered the United States on July 6, 2014. She allegedly requested asylum upon her arrival but was never

instructed to file an application within the one-year deadline. As a result, she filed her application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT) four years later, listing her daughter as a derivative applicant. Petitioner alleged persecution on account of her membership in two particular social groups (PSG)—witnesses who cooperate with law enforcement and nuclear family members of Interiano-Erazo—and on account of an imputed political opinion.

The IJ held a hearing—wherein Petitioner submitted documentary evidence and gave her testimony regarding her experience in Guatemala—and subsequently entered an order. First, the IJ noted that Petitioner had conceded proper service of her Notice to Appear and admitted to the charges therein. The IJ found Petitioner credible and statutorily eligible to request asylum despite the one-year deadline. Moving to the validity of Petitioner's proposed PSGs, the IJ rejected her proposed "witnesses who cooperate with law enforcement" PSG, finding that it lacked the requisite particularity and social distinction. The IJ accepted Petitioner's proposed "nuclear family members of Wilvy Interiano-Erazo" PSG but found that Petitioner's alleged harm did not occur on account of her membership in the group. Instead, the IJ found that the drug traffickers targeted her in an effort to prevent Petitioner from telling others about Interiano-Erazo's murder. The IJ then denied Petitioner's claim based on imputed political opinion, finding that the record did not demonstrate that the drug traffickers threatened Petitioner on the basis of a political opinion but rather to silence her as a witness to criminal activity. Because Petitioner failed to establish a viable claim for asylum, the IJ found that she necessarily had failed to meet the more stringent withholding-of-removal burden. Next, the IJ denied her claim for CAT protection, finding that Petitioner had failed to establish that she would suffer persecution at the hands of, or acquiescence of, the Guatemalan government. Finally, the IJ denied her claims for humanitarian asylum and voluntary departure. Accordingly, the IJ ordered Petitioner and her daughter be removed to Guatemala.

Petitioner appealed the IJ's decision to the BIA. The BIA first noted that Petitioner had not challenged on appeal the IJ's denial of Petitioner's request for

Appellate Case: 22-1015     Page: 3     Date Filed: 01/23/2023 Entry ID: 5237924

CAT protection or her request for voluntary departure. The BIA further found that Petitioner had not challenged the IJ's determination regarding her "nuclear family members of Wilvy Interiano-Erazo" PSG. With regard to the other claims, the BIA adopted and affirmed the IJ's decision. The BIA went further to address Petitioner's reliance on Henriquez-Rivas v. Holder, 707 F.3d 1081 (9th Cir. 2013), which held that those who testified in court could be recognized as a PSG, especially because the at-issue country had passed legislation to protect the same. The BIA first noted that this was out-of-circuit precedent and, in any event, that Petitioner "[ha]d not testif[ied] as a witness in any criminal proceedings and ha[d] not presented evidence that her proposed social group comprising of 'witnesses to a crime who reported the crime to the police' ha[d] been offered witness protection, or [wa]s otherwise socially distinct." Accordingly, the BIA dismissed Petitioner's appeal.

Petitioner now petitions this Court for review of the BIA's decision. We agree with the BIA that Petitioner has failed to demonstrate that "witnesses who cooperate with law enforcement" is recognized as a socially distinct group within Guatemalan society and thus deny the petition.

II.

Petitioner challenges only the BIA's determination that she failed to demonstrate that her proposed group of "witnesses who cooperate with law enforcement" is particular and socially distinct within Guatemalan society. "We review the BIA's decision, as it is the final agency decision; however, to the extent that the BIA adopted the findings or the reasoning of the IJ, we also review the IJ's decision as part of the final agency action." Cano v. Barr, 956 F.3d 1034, 1038 (8th Cir. 2020) (citation omitted). "Whether Petitioner's proposed group constitutes a [PSG] is a legal question which we review de novo, but we review the BIA's underlying factual findings for substantial evidence." Rosales-Reyes v. Garland, 7 F.4th 755, 759 (8th Cir. 2021) (citations omitted). "Under this 'extremely deferential standard of review[,] . . . this [C]ourt will not reverse the agency's decision unless the petitioner demonstrates that the evidence was so compelling that no reasonable

-4-

fact finder could fail to find in favor of the petitioner.'" Cano, 956 F.3d at 1038 (first and second alterations in original) (citation omitted).

A noncitizen may seek asylum if she faced or may face persecution on account of, inter alia, membership in a PSG. 8 U.S.C. § 1101(a)(42)(A). "[W]hether an asserted group qualifies as a [PSG] turns on whether the group is '(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question.'" Rosales-Reyes, 7 F.4th at 759 (citation omitted). In adopting the IJ's decision, the BIA found that Petitioner's proposed group was neither particular nor socially distinct. Given that the BIA supplemented the IJ's decision with its own reasoning on the lack-of-social-distinction prong, we begin our analysis with that prong.

Petitioner argues that the BIA applied the wrong legal standard for social distinctness by requiring Petitioner's proposed PSG to include an element of public testimony. "Whether a given [PSG] is perceived as distinct by the society of which it is part depends on evidence that the society makes meaningful distinctions based on the common immutable characteristics defining the group." Fuentes v. Barr, 969 F.3d 865, 871 (8th Cir. 2020) (per curiam) (citation omitted). However, "persecutory conduct alone cannot define the group." Id. (citation omitted). Instead, "there must be evidence showing that society in general perceives, considers, or recognizes persons sharing the particular characteristics to be a group. . . . [I]t must be commonly recognized that the shared characteristic is one that defines the group." Miranda v. Sessions, 892 F.3d 940, 943 (8th Cir. 2018) (alterations in original) (citation omitted).

In arguing that her proposed group is socially distinct, Petitioner relies heavily on Matter of H-L-S-A-, 28 I. & N. Dec. 228 (BIA 2021), an intervening decision wherein the BIA held that:

> cooperation with law enforcement may satisfy the requirements of immutability, particularity, and social distinction and establish a valid

-5-

> [PSG] . . . if the cooperation is public in nature, particularly where testimony was given in public court proceedings, and the evidence in the record reflects that the society in question recognizes and provides protection for such cooperation.

Id. at 237. In reaching this conclusion, the BIA relied in part on this Court's precedent rejecting a proposed PSG because it failed to include an element of public cooperation. See id. at 235 (citing Miranda, 892 F.3d at 943 ("Moreover, the record does not support the conclusion that witnessing a gang murder places Miranda in a socially distinct group, particularly since he did not testify against any gang members.")); see also Ngugi v. Lynch, 826 F.3d 1132, 1138 (8th Cir. 2016) ("Furthermore, Ngugi presented no evidence that he ever served as a witness against the Mungiki in any public proceedings or, even if he had, that Kenyan society 'recognizes the unique vulnerability of people who testify against gang members in criminal proceedings.'" (citation omitted)).[1] Thus, Petitioner argues that, in her case, the BIA incorrectly required an element of public testimony when Matter of H-L-S-A- requires only an element of public *cooperation*.

Even assuming that our jurisprudence does not require as a matter of law that witness-based PSGs include an element of public testimony, the BIA and the IJ committed no error because each found that the record contains insufficient evidence to demonstrate that Guatemalan society views "witnesses who cooperate with law enforcement" as a socially distinct group. See Administrative R. 86 (IJ's Decision) ("Here, the respondent's proposed group fails to limit membership to persons who testified against gang members. Further, the record contains insufficient evidence

---

[1]Petitioner further argues that this Court should remand the case to the BIA to apply Matter of H-L-S-A- in the first instance. However, Matter of H-L-S-A- did not substantively modify the PSG analysis. See Ngugi, 826 F.3d at 1139 (finding that remand was unnecessary, in part, when intervening case law merely clarified prior authority). Moreover, remand is unnecessary because, as discussed below, the BIA did not solely rely on Matter of H-L-S-A-, and there is no record evidence to support the conclusion that Petitioner's proposed PSG is socially distinct. See Miranda, 892 F.3d at 944.

-6-

to prove that 'witnesses who cooperate with law enforcement' are considered socially distinct within Guatemalan society."); Administrative R. 4 (BIA's Decision) ("Further, the respondent did not testify as a witness in any criminal proceedings and has not presented evidence that her proposed social group comprising of 'witnesses to a crime who reported the crime to police' has been offered witness protection, *or is otherwise socially distinct*." (emphasis added) (citation omitted)). Because the IJ and the BIA did not solely rely on the absence of an element of public testimony, the BIA did not err in conducting its legal analysis regardless of whether our precedent requires public testimony or not.

Petitioner nevertheless argues that the record evidence demonstrates that Guatemalan society views the proposed PSG as a socially distinct group. To grant the petition for review, we must find that any "reasonable adjudicator would be compelled to conclude" that the record establishes that Guatemalan society views Petitioner's proposed PSG as socially distinct. 8 U.S.C. § 1252(b)(4)(B). In support of her view, Petitioner points to the United Nations High Commissioner for Refugees January 2018 report, which notes that "[i]n 1996, Guatemala adopted a law that created an office for the provision of protection and support to witnesses in criminal processes." Administrative R. 267. Formal legislation can indicate that the society in question recognizes the group as socially distinct. Matter of H-L-S-A-, 28 I. & N. Dec. at 237; see also Miranda, 892 F.3d at 943-44 (recognizing Ninth Circuit precedent that considered witness-protection legislation as evidence that Salvadoran society recognized witnesses who testified in court as a socially distinct group). However, Petitioner provides no evidence that the law would apply to someone like Petitioner, who merely filed a police report. Cf. Matter of H-L-S-A-, 28 I. & N. Dec. at 239 (finding that El Salvador's witness-protection law did not demonstrate that petitioner's proposed "prosecutorial witnesses" PSG was socially distinct when it was uncertain whether the law applied to petitioner "who only participated in a photo line-up in the United States and did not testify or offer evidence publicly").

-7-

Appellate Case: 22-1015   Page: 7   Date Filed: 01/23/2023 Entry ID: 5237924

Though the above-mentioned report does note that "the identity of protected witnesses is reportedly sometimes released by the authorities," Administrative R. 267, and Petitioner *believes* that law enforcement disclosed her identity to the drug traffickers, this evidence alone is insufficient to compel a conclusion this group is socially distinct. Finally, despite the fact that the report states that informants and witnesses of crimes committed by gangs "may be in need of international refugee protection . . . on the basis of their membership of a [PSG]," Administrative R. 269, this evidence does not speak to how *Guatemalan society* perceives Petitioner's proposed PSG of "witnesses who cooperate with law enforcement." See Matter of H-L-S-A-, 28 I. & N. Dec. at 239. Accordingly, we find that Petitioner has failed to show that the record in this case compels a conclusion contrary to the BIA's determination that Guatemalan society does not view "witnesses who cooperate with law enforcement" as a socially distinct group.

Having determined that the BIA did not err in finding that Petitioner failed to establish that her proposed PSG was socially distinct—a prerequisite to establishing a viable PSG for asylum purposes—we need not address whether the BIA erred in finding that Petitioner likewise failed to demonstrate that her proposed PSG was particular. Rosales-Reyes, 7 F.4th at 759 (noting that a group must include both particularity *and* social distinction to qualify as a PSG).

III.

For the foregoing reasons, we deny the petition for review.

_____